**AMERICAN ARBITRATION ASSOCIATION**
13727 Noel Road, Suite 700,
Dallas, TX 75240

| | |
|---|---|
| MARLA E. JACKSON, )<br>  Claimant )<br> )<br>           v.         )<br> )<br>CONIFER REVENUE CYCLE SOLUTIONS, IN, )<br>  Respondent )<br> ) | CASE NO. 01-18-003-3194 |

## CLAIMANT OBJECTS TO THE APPOINTMENT OF ARBITRATOR LAMOREAUX

**I**

COME NOW, on July 17, 2018 by Order of the United Sates Eastern District of Texas, Sherman Division, by Judge Richard A. Schell compelled this case to binding arbitration pursuant to the Respondent's employment arbitration agreement. Pursuant to the Order the Claimant submitted demand for arbitration to the American Arbitration Association (AAA). The above captioned matter is now before the AAA as the preferred venue of the Respondent in adjudicating her claim.

**II**

Claimant Marla Jackson is an African-American single-parent, born in Little Rock, Pulaski County, Arkansas and now reside in Plano, Denton County, Texas, and a suburb of Dallas, Texas. Since her termination from Conifer Revenue Cycle Solutions, LLC ("Respondent"), Ms. Jackson has tried to mount a rebound from a condition of emotionally distort and financially destitute. Over a year ago she found employment and her daughter returned to school and recently completed her degree.

**III**

The Respondent is headquartered in the Frisco, Texas, and a suburb of Dallas Texas. The Respondent has 135 local regions nationwide and employs more than 4,600 employees and multiple contract service relationships, including large and small legal relations that extend throughout the country, with the majority near its headquarter location. The Respondent's annual revenue is reported at $ 823.1M in 2017. The Respondent's management and professional workforce is less than 13 percent minorities and less than 8 percent of its staff is African-American represented in

**AMERICAN ARBITRATION ASSOCIATION**
13727 Noel Road, Suite 700,
Dallas, TX 75240

upper level management. Historically, the Respondent's diversity record in promoting women and minorities to executive level and senior management is below the industry norms. The Respondent is represented by one of the largest law firm in the country, with 53 listed locations across the country. The law firm historical diversity record in promoting women and minorities is well established that there are less opportunities for advancement than their white male counterpart.

### IV

As recent as November 29, 2018 it was published that Shawn C. Carter, known worldwide as JAY-Z, through a Petition, pursuant to Article 75 of the New York Civil Practice Law and Rules ("CPLR"), for an order for the court to issue a temporary restraining order regarding an arbitration currently pending before the American Arbitration Association (the "AAA"), Case No. 01-18-0003-6487, expressly raising concerns that the AAA arbitration pool lacks diversity in a way that provides African-Americans a fair opportunity for their case to be adjudicated. In the petition Mr. Carter states: "The AAA's lack of African-American arbitrators came as a surprise to Petitioners, in part because of the AAA's advertising touting its diversity. This blatant failure of the AAA to ensure a diverse slate of arbitrators is particularly shocking given the prevalence of mandatory arbitration provisions in commercial contracts across nearly all industries. It would stand to reason that prospective litigants—which undoubtedly include minority owned and operated businesses— expect there to be the possibility that the person who stands in the shoes of both judge and jury reflects the diverse population. The AAA's arbitration procedures, and specifically its roster of neutrals for large and complex cases in New York, deprive black litigants like Mr. Carter and his companies of the equal protection of the laws, equal access to public accommodations, and mislead consumers into believing that they will receive a fair and impartial adjudication."

### V

In the Claimant rebuttal, dated September 28, 2018, to the Respondent's object to local, the Claimant pointed out disenfranchising or disadvantages to her ability to receive an equal opportunity, i.e. equal protection or impartial adjudication because of perceived or unconscious conditions negative race and/or sex perceptions that the Claimant would have to overcome in order to prevail. The Claimant raised further concerns about the arbitration selection process of using only a roster of arbitrators from the Dallas area for the parties to choose from bears out to be

**AMERICAN ARBITRATION ASSOCIATION**
13727 Noel Road, Suite 700,
Dallas, TX 75240

material on its face. Noted but not raised then, the two-rosters provided by AAA was absent African-American arbitrators and with less than 10 percent of female arbitrators, which the Claimant is represented both classes.

## VI

Such exclusion risks an unconscious bias in decision-making because "negative images of 'the others' is pervasive and exists in almost every person, including Caucasians, Asians, non-white Hispanics, African Americans, and other minorities." Larry J. Pittman, *Mandatory Arbitration: Due Process and Other Constitutional Concerns*, 39 Cap. U. L. Rev. 853, 862 (2011). "Because of the pervasiveness of unconscious racism, arbitrators are not exempted from its negative influences, which might appear during arbitration hearings." (CPLR § 7503(b) Petition to Stay Arbitration)

## VII

In Shawn C. Carter CPLR § 7503(b) Petition to Stay Arbitration, section D, "The Lack of Diverse Arbitrators" Mr. Carter's states: "AAA's website highlights its purported commitment to ensuring that its arbitrators come from diverse backgrounds, "recogniz[ing] the importance and contribution of a diverse work force, a diverse Roster of Neutrals, a diverse Board, and commit to respect and increase diversity in all [its] endeavors." In fact, the AAA devotes a page on its website to its "shared commitment to diversity." It lists as its mission "to promote the inclusion of those individuals who historically have been excluded from meaningful and active participation in the alternative dispute resolution (ADR) field."

## VIII

Mr. Carter continues: "As AAA's own assistant General Counsel has recognized, "[t]here is no question that the ADR community is lacking in diversity," which the AAA attributes to "a lack or perceived lack of access for diverse candidates, failure by arbitral organizations to reach out to diverse candidates, and an arbitrator selection process that relies upon users to select neutrals to serve on their cases." Sasha A. Carbone & Jeffrey T. Zaino, Increasing Diversity Among Arbitrators, A Guideline to What the New Arbitrator and ADR Community Should Be Doing to

**AMERICAN ARBITRATION ASSOCIATION**
13727 Noel Road, Suite 700,
Dallas, TX 75240

Achieve This Goal." "unconscious bias" towards black defendants, and that the AAA's lack of racial diversity consequently "deprives litigants of colour of a meaningful opportunity to have their claims heard by a panel of arbitrators reflecting their backgrounds and life experience." "deprive black litigants … of the equal protection of the laws, equal access to public accommodations, and mislead consumers into believing that they will receive a fair and impartial adjudication."

### IX

Historically it has been well established that racism conscious and unconsciously plays a part in the lives and decisions of Americans, and more detrimentally against African-Americans.
There are regions across this United States where racism is more invasive than others and respectfully, Texas has a pronounced history of racial injustices, that is fostered throughout its communities, government and the administration of judicial decisions.

### X

Given what the Claimant already raised as concerns of deference given to the Respondent throughout the beginning of the arbitrator selection process, AAA provided the parties with an arbitrator's a roster that did not include a diverse, i.e. African-American and/or a fair number of gender diversity arbitrators for the parties to select from, ultimately the parties had to rely on the AAA default selection process that resulted in AAA proposing a white male arbitrator appointment and finally, supported by the ruling by Southern District of New York court Judge Saliann Scarpulla in Mr. Carter's petition, the Claimant objects to Arbitrator Lamoreaux being appointed in her case.

### XI

The Claimant cannot, and AAA should not ignore the significant and application of Judge Scarpulla order to stay Mr. Carter's petition. The order points to relevance in Mr. Carter's assertion that the current AAA arbitration roster selection process lacks diversity to the detriment of African-American petitioners before AAA. The Claimant believes there is a direct parallel condition set forth herein that she too, given her race and sex, may be exposed to unconscious bias in her case before AAA.

**AMERICAN ARBITRATION ASSOCIATION**
13727 Noel Road, Suite 700,
Dallas, TX 75240

## XII

Inasmuch as Mr. Carter's arbitration is a commercial process, there should be no distinction in the application of equal protection and diversity as law and AAA's declaration to provide diversity in its process. The Claimant hopes that current events and Claimant's objection will cause pause and reconsideration in order to provide the Claimant with a process free, as possible, from unconscious bias and include diversity in AAA arbitration process.

## XIII

The Claimant prays that AAA completely exhaust all applicable employment arbitration rules and procedural processes, weigh the circumstances and conditions and grant Claimant's request.

Submitted this 5th day of Dec 2018.

/s/ *J.G. Long*

J.G. Long, Claimant's Representative
Sterling, Winchester & Long, LLC
114 Pleasant Home Road, Suite B
Augusta, Georgia 30907
(706) 262-2002 Office
(706) 261-5664 Fax
Email: swl@long.net